AUG 13 2008

1. MARCUS L. HARRISON

2.     PLAINTIFF

3.         V.

4. INSTITUTIONAL GANG

5. OF INVESTIGATIONS...

6.     DEFENDANTS

7.

PLAINTIFF'S REPLY TO THE DEFENDANT'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MOTION FOR A COURT ORDER...

CASE NO: C·07·3824·SI·(PR)·

8.         UNITED STATES DISTRICT COURT

9.         NORTHERN DISTRICT OF CALIFORNIA

10.     PLAINTIFF, HEREBY MOVES TO OFFER A REPLY TO THE DEF-

11. ENDANT'S OPPOSITION TO THE PLAINTIFF'S SUPPLEMENTAL MOT-

12. ION, IN WHICH I AM REQUESTING THIS COURT TO ISSUE A

13. COURT ORDER, SO THAT THE PLAINTIFF CAN; 1.) MAKE PHOTOC-

14. OPIES OF PLAINTIFF'S POTENTIAL WITNESSES PERSONAL PROP-

15. ERTY AND/OR DOCUMENTS, IN PREPARATION OF, OPPOSING THE

16. DEFENDANT'S FORTH·COMING SUMMARY JUDGMENT MOTION;

17. AND 2.) SO THAT PLAINTIFF CAN HAVE UNIMPEDED CORRESPO-

18. NDENCE WITH SAID POTENTIAL WITNESSES, FOR PURPOSES

19. OF RETURNING THEIR PERSONAL PROPERTY AND/OR DOCUMENTS

20. BACK TO THEM, ONCE SAID PHOTOCOPIES IS MADE, SO THAT

21. THEY CAN PURSUE LEGAL REDRESS IN THEIR OWN INDIVIDUAL

22. LEGAL CLAIMS, AND SO THAT ANY QUESTIONS OR CONCERNS CAN

23. BE CLARIFIED, WITH REGARDS TO THE AFFIDAVITS AND/OR DECL-

24. ARATIONS THAT THEY WILL BE SUBMITING, IN SUPPORT OF MY

25. 1983· CIVIL CLAIM...

26.     THUS FAR, PLAINTIFF IS ONLY ABLE TO STATE WITH ANY

27. SPECIFIC CERTAINTY, THE NAMES AND DOCUMENTS OF (2)·

28. TWO OF THE PRISONERS THAT IS LISTED IN THE PLAINTIFF'S

1. SUPPLEMENTAL MOTION.. AND THAT IS INMATES PAUL JONES
2. • B26077 ; AND JIMMY WILLIAMSON • D34788 .. AND
3. THIS IS DUE TO THE VAGUE, AMBIGUOUS, AND SUBJECTIVE APPL-
4. ICATION OF, THE ONE TIME CORRESPONDENCE POLICY, THAT
5. PELICAN BAY STATE PRISON OFFICIALS IS USING, WHICH THUS
6. PROHIBITS ME FROM WRITING TO THE OTHER LISTED PRISON-
7. ERS AGAIN, IN ORDER TO CLARIFY THE NATURE OF SAID DOCU-
8. MENTS.. THIS WAS MADE EVIDENT, WHEN I ATTEMPTED TO DO
9. THIS, WITH INMATE PAUL JONES .. (SEE PLAINTIFF'S SUPPLEM-
10. ENTAL MOTION — EXHIBIT • C.)
11.     INMATE PAUL JONES # B26077 HAS OFFERED A 3•PAGE
12. DECLARATION IN SUPPORT OF PLAINTIFF'S 1983•CIVIL CLAIM..
13. ATTATCHED TO INMATE PAUL JONES #B26077 DECLARATION
14. IS A TOTAL OF 39•PAGES, WHICH WERE IDENTIFIED AS EXH-
15. IBITS • A. THRU • D.. (SEE EXHIBIT•A.) WITHIN PAUL
16. JONES # B26077 DECLARATION, HE OFFERS A TOTAL OF 19
17. DECLARATORY POINTS.. PLAINTIFF ADMITS, THAT SOME OF THE
18. DOCUMENTS ARE IRRELEVANT TO PLAINTIFF'S 1983•CIVIL CLA-
19. IM, SO I WILL ONLY SPEAK ABOUT THE DOCUMENTS THAT ARE
20. RELEVANT.. BUT AS INDICATED BY S.H.U. LAW LIBRARY
21. STAFF, THEY WILL NOT MAKE PHOTOCOPIES OF OTHER PRISON-
22. ERS PERSONAL PROPERTY AND/OR DOCUMENTS, WITHOUT A
23. COURT ORDER.. (SEE PLAINTIFF'S REQUEST FOR A COURT
24. ORDER — EXHIBIT•A.) HENCEFORTH, A COURT ORDER IS
25. NECESSARY IN THIS 1983•CIVIL CLAIM, AS PAUL JONES
26. HAS DECLARED TO SEVERAL RELEVANT MATERIAL FACTS, THAT
27. SPEAKS DIRECTLY TO THE ISSUES RAISED IN THE PLAINTIFF'S
28. 1983•CIVIL CLAIM.. I WILL NOW LIST SAID DOCUMENTS:

1.   • All of the documents listed in Exhibit·A., as
2. these documents that is noted therein, speaks to the
3. objectives of; "The Community's NABSIO Program, and
4. the George Jackson University", as they identify and
5. speak to the educational foundation of the New Afrikan
6. Institute of Criminology 101, etc.";
7.   • In Paul Jones declaratory point #7, he talks about
8. the Community's NABSIO Program / George Jackson
9. University, as it is designed to reduce the functional
10. & cultural illiteracy among poor Black prisoners.. As
11. a part of the George Jackson University, and the NABS·
12. IO Community's Programs, there is several educational
13. institutions that is designed to aid in this central
14. task, such as; "The George Jackson University, the New
15. Afrikan Collective Think Tank, the New Afrikan Instit·
16. ute of Criminology 101, etc.." Paul Jones has been issu·
17. ed a certificate for successfully completing a text
18. course from these educational institutions, thus speak·
19. ing to the legitimacy of the aforementioned education·
20. al institutions, in which the defendant's is alleging
21. to be gang related & illegitimate.. However, the SHU
22. law library staff won't photocopy said certificate
23. (see plaintiff's request for a court order — Exhibit·
24.   A.);
25.   • Exhibit·C· — In re: "Censorship ban of comm·
26. unity's cultural celebration — Black August.."
27. There is (3)· three 602's dated 6/27/05; 8/21/05; and
28. 10/13/05 that has inmate Paul Jones name on them,

   •3    OF    9·

1. IN WHICH PAUL JONES IS CHALLENGING THE UNJUST CRIMIN·
2. ALIZATION OF THE BLACK AUGUST MEMORIAL, AND TO WHICH,
3. PAUL JONES DEMONSTRATES THAT THE BLACK AUGUST MEMOR·
4. IAL IS NOT A PRISON GANG ACTIVITY OR CONCEPT.. THIS POINT
5. IS A MIRROR IMAGE OF THE CLAIM RAISED IN PLAINTIFF'S CIVIL
6. CLAIM, AS I AM CONTESTING THE FACT, THAT, THE BLACK AUG·
7. UST MEMORIAL IS NOT PRISON GANG ACTIVITY, BUT IS A SOCIAL·
8. LY, HISTORICALLY & CULTURALLY EVOLVED CONCEPT FOR ALL BLACK
9. PEOPLE;
10.     • A COPY OF A BLACK AUGUST FLYER, IN WHICH THE
11. BLACK COMMUNITY IS COMMEMORATING THE 25TH· ANNIVERS·
12. ARY AND THE FESTIVE CELEBRATION OF THE BLACK AUGUST
13. MEMORIAL.. AND AGAIN, THIS IS MATERIAL EVIDENCE THAT
14. THE BLACK AUGUST MEMORIAL IS A SOCIALLY, HISTORICALLY, &
15. CULTURALLY EVOLVED CONCEPT FOR ALL BLACK PEOPLE, AND IS
16. NOT A PRISON GANG ACTIVITY AS THE DEFENDANT'S IS
17. ALLEGING IN PLAINTIFF'S CIVIL CLAIM;
18.     • EXHIBIT · D · LEGAL CASE ANNOUNCEMENT TO THE
19. FREE PUBLIC THAT IS ENTITLED ;" FREEDOM, JUSTICE, &
20. HUMAN RIGHTS " THAT IS DATED SEPTEMBER 8TH; 2006..
21. THIS IS A CLASS ACTION PETITION, IN WHICH I AM ALSO
22. A LITIGANT (SEE EXHIBIT · B.).. THIS DOCUMENT ALSO
23. OFFERS A HISTORICAL ANALYSIS & SOME PERSPECTIVE, AS TO
24. WHAT THE BLACK AUGUST MEMORIAL STANDS FOR, AND REP·
25. RESENTS FOR ALL NEW AFRIKAN BLACK PEOPLE.. AGAIN, AN
26. ESSENTIAL ISSUE THAT THE PLAINTIFF HAS RAISED IN HIS
27. 1983 CIVIL CLAIM;
28.

1. • AN AFFIDAVIT DATED OCTOBER 26TH; 2006 BY PAUL
2. JONES, WHICH ALSO SPEAKS TO THE CULTURAL & HISTORICAL
3. SIGNIFICANCE OF THE BLACK AUGUST MEMORIAL IN RELATION
4. TO ALL NEW AFRIKAN BLACK PEOPLE..
5.    I WILL NOW LIST THE RELEVANT PERSONAL PROPERTY
6. DOCUMENTS THAT PRISONER JIMMY WILLIAMSON D34788
7. HAS, AND IS OFFERING IN HIS ATTATCHMENTS TO HIS AFFI-
8. DAVIT / DECLARATION IN SUPPORT OF THE PLAINTIFF'S CIVIL
9. CLAIM:
10.    • IN ATTATCHMENT #1, JIMMY WILLIAMSON • #D34788
11. HAS • (2) • TWO DOCUMENTS LISTED AS; 1.) THE NEW AFRIKAN
12. COLLECTIVE THINK TANK — COMMUNITY'S EDUCATIONAL PAP-
13. ERS; AND 2.) THE NEW AFRIKAN PRISONER'S THINK TANK
14. ORGANIZATIONAL BASE.. BOTH OF THESE DOCUMENTS OFFERS
15. SOME PERSPECTIVE, AS TO THE EDUCATIONAL, SOCIAL, & POLIT-
16. ICAL PLATFORM, THAT THE NEW AFRIKAN COLLECTIVE THINK
17. TANK ACTUALLY REPRESENTS FOR ALL NEW AFRIKAN BLACK
18. PEOPLE.. WHICH STANDS IN DIRECT OPPOSITION TO THE ALLEG-
19. ATIONS OF IT BEING A PRISON GANG ACTIVITY, AS IS BEING
20. ALLEGED BY THE DEFENDANT'S IN THE PLAINTIFF'S CIVIL CLAIM;
21.    • IN ATTATCHMENT #2, JIMMY WILLIAMSON • #D347-
22. 88 HAS SEVERAL DOCUMENTS LISTED, IN WHICH IS OF PAR-
23. TICULAR RELEVANCE TO THE ISSUES RAISED IN THE PLAINTIFF'S
24. CIVIL CLAIM, SUCH AS; "A NEW AFRIKAN COLLECTIVE THINK
25. TANK COMMUNITY LETTER; A SERIES OF DOCUMENTS THAT IS
26. DEFINED AS NEW AFRIKAN IDEAS, CONCEPTS, IDEOLOGY —
27. BY THE NEW AFRIKAN COLLECTIVE THINK TANK; NEW AFRI-
28. KAN FREEDOM NETWORK COMMUNITY BULLETIN; AND NEW

1. AFRIKAN INSTITUTE OF CRIMINOLOGY 101.." ALL OF THESE
2. DOCUMENTS CONCRETELY DEMONSTRATE A SUBSTANTIVE MATER-
3. IAL FOUNDATION, AS TO WHAT; "THE BLACK AUGUST MEM-
4. ORIAL, THE NEW AFRIKAN INSTITUTE OF CRIMINOLOGY 101,
5. THE NEW AFRIKAN COLLECTIVE THINK TANK & ETC." ALL
6. STAND FOR, IN DIRECT OPPOSITION TO THE DEFENDANT'S ALLE-
7. GATIONS OF THEM BEING ILLEGITIMATE FRONTS TO PROMOTE
8. PRISON GANG ACTIVITY.. — I.e." CRIMINAL & UNLAWFUL
9. ACTIVITY.."
10.      THESE MATERIAL FACTS PROVE WITHOUT ANY QUESTION,
11. THAT PLAINTIFF'S REQUEST FOR A COURT ORDER, IN ORDER TO
12. OBTAIN PHOTOCOPIES, & TO HAVE UNIMPEDED CORRESPONDENCE
13. WITH BOTH PAUL JONES & JIMMY WILLIAMSUN, AND THE
14. REST OF THE PRISONERS THAT THE PLAINTIFF HAS IDENTIFIED
15. IN MY SUPPLEMENTAL MOTION (SEE SUPPLEMENTAL MOTION
16. — PAGE·4.) IS BEING MADE IN GOOD FAITH, AS THE PLAIN-
17. TIFF HAS HEREBY PROVEN THAT THESE PRISONERS HAVE PERS-
18. ONAL KNOWLEDGE, AND DOCUMENTS THAT IS RELEVANT TO THE
19. PLAINTIFF'S CIVIL CLAIM..
20.      A COURT ORDER IS NEEDED IN THIS INSTANCE, IN ORDER
21. TO OFFER THE PLAINTIFF SOME TYPE OF DUE PROCESS PROCEDURAL
22. PROTECTION, IN THAT, THERE HAS BEEN PREVIOUS INSTANCES
23. IN WHICH THE INSTITUTIONAL GANG OF INVESTIGATIONS
24. (I.G.I.) UNIT CORRECTIONAL OFFICERS HAVE SEARCHED
25. PRISONER'S CELLS, AND CONFISICATED LEGAL DOCUMENTS,
26. DUE TO SAID LEGAL DOCUMENTS, HAVING OTHER PRISONER'S
27. NAMES ON THESE LEGAL DOCUMENTS, ON ACCOUNT OF THESE
28. PRISONERS BEING INVOLVED IN, OR EITHER ASSISTING ONE

1. ANOTHER, IN A PARTICULAR LEGAL ENDEAVOR.. AND INSPITE
2. OF MATERIAL EVIDENCE DEMONSTRATING THIS, THE INSTIT.
3. UTIONAL GANG OF INVESTIGATIONS (I.G.I.) UNIT, HAS
4. USED THIS INFORMATION AGAINST US, TO INDICATE THAT
5. ONE IS EITHER PROMOTING OR IS INVOLVED IN SOME TYPE OF
6. PRISON GANG ACTIVITY.. THIS WAS DONE TO PLAINTIFF, BY
7. THE INSTITUTIONAL GANG OF INVESTIGATIONS (I.G.I.)
8. UNIT, WHEN A COPY OF A CLASS ACTION LEGAL PETITION
9. WAS REMOVED FROM ANOTHER PRISONER'S CELL, TO WHICH I
10. REMAIN INVOLVED IN, HOWEVER, I WAS CHARGED WITH
11. BEING INVOLVED IN ACTIVE GANG ACTIVITY .. (SEE · EXHIBIT.
12. B.)

13.   UNIMPEDED CORRESPONDENCE WOULD NOT COMPROMISE
14. THE SECURITY OF THIS PRISON, AS ALL OUT·GOING & IN·COM·
15. ING MAIL OF EVERY SINGLE PRISONER IN THIS PRISON, IS
16. SCREENED, EXAMINED, & READ BY THE CUSTODY STAFF
17. (PRISON GUARDS) OF PELICAN BAY STATE PRISON.. AND IN
18. PARTICULAR, THOSE PRISONERS WHO ARE HOUSED IN UNITS
19. D1 THRU D4, SUCH AS MYSELF, AND THE (5) · FIVE PRISON·
20. ERS THAT I'VE IDENTIFIED IN MY SUPPLEMENTAL MOTION
21. ON PAGE · 4 .. ALL OF OUR MAIL IS SCREENED, EXAMINED,
22. & READ BY THE INSTITUTIONAL GANG OF INVESTIGATIONS
23. (I.G.I.) UNIT.. WHICH BRINGS FORTH A MATERIAL CON·
24. TRADICTION, THAT MANDATES A ESSENTIAL NEED FOR THIS
25. COURT TO OUTLINE A INSTRUCTIVE CRITERIA AS TO HOW THE
26. PHOTOCOPIES SHOULD BE DONE ; WHO SHOULD BE REVIEWING
27. OUR LEGAL CORRESPONDENCE, OTHER THAN THE INSTITUTIONAL
28. GANG OF INVESTIGATIONS (I.G.I.) UNIT, IN ORDER TO

1. PROTECT THE INTEGRITY OF THE PLAINTIFF BEING ABLE TO
2. EFFECTIVELY LITIGATE HIS 1983 · CIVIL CLAIM AGAINST THE
3. INSTITUTIONAL GANG OF INVESTIGATIONS (I.G.I.) UNIT;
4. AND ALSO OUTLINE A SET OF INSTRUCTIONS FOR THE PLAINTIFF
5. AND THE PLAINTIFF'S POTENTIAL WITNESSES TO FOLLOW, IN
6. ORDER TO ENSURE THE SAFETY & SECURITY OF THIS PRISON,
7. FOR WHEN WE SUBMIT SAID 'LEGAL CORRESPONDENCES TO &
8. FROM ONE ANOTHER .. AS AGAIN, A COURT ORDER IS NEEDED
9. IN THIS INSTANCE, IN ORDER TO FACILITATE UNIMPEDED COR-
10. RESPONDENCE WITH SAID PRISONERS, DUE TO PELICAN BAY
11. STATE PRISON'S VAGUE, AMBIGUOUS, & ARBITRARY APPLICATION
12. OF THEIR ONE TIME CORRESPONDENCE POLICY .. (SEE PLAIN-
13. TIFF'S SUPPLEMENTAL MOTION · EXHIBIT · C.)
14.    IN THE EVENT THAT THIS COURT GRANTS THE PLAINTI-
15. FF'S REQUEST FOR A COURT ORDER, I WOULD HIGHLY SUGGEST
16. THAT THIS COURT DESIGNATE & APPOINT MS. ERIN GRIFFIN
17. OF PELICAN BAY'S LITIGATION DEPARTMENT, AS THE CHIEF
18. FACILITATOR FOR THIS TASK, AS A PART OF THE INSTRUCTIVE
19. CRITERIA FOR ARRANGING THE PROTOCOL FOR THIS COURT ORDER..
20.    PLAINTIFF BELIEVES THAT THIS ARRANGEMENT WILL
21. OFFER ME THE NECESSARY DUE PROCESS PROTECTION, THAT
22. I AM NOT AFFORDED UNDER PELICAN BAY'S ONE TIME CORR-
23. ESPONDENCE POLICY, IN THAT, THE SCREENING, EXAMINING,
24. & THE READING OF OUR LEGAL CORRESPONDENCE, WOULD BE
25. HANDLED BY A NEUTRAL PARTY, WHO IS NOT INVOLVED IN
26. PLAINTIFF'S 1983 · CIVIL CLAIM .. THE INSTITUTIONAL
27. GANG OF INVESTIGATIONS (I.G.I.) UNIT HAS ADMITTED
28. TO READING PLAINTIFF'S LEGAL CORRESPONDENCE IN THE

1. PAST.. (SEE EXHIBIT·C.) TO FORCE THE PLAINTIFF TO
2. LITIGATE MY CIVIL CLAIM UNDER THESE CIRCUMSTANCES,
3. HANDICAPS MY ABILITY TO EFFECTIVELY LITIGATE MY
4. 1983· CIVIL CLAIM, AS THE INSTITUTIONAL GANG OF
5. INVESTIGATIONS (I.G.I.) UNIT WILL BE ABLE TO HAVE
6. A INSIDE SCOOP, AS TO HOW THE PLAINTIFF IS PREPAR·
7. ING & STRATEGIZING MY LEGAL POINTS & ARGUMENTS
8. AGAINST THEM..
9.      PLAINTIFF HEREBY DECLARES UNDER THE PENALTY OF
10. PERJURY, THAT THE FOREGOING FACTS IS TRUE AND CORRECT
11. , AND IS BASED ON THE PLAINTIFF'S OWN PERSONAL KNOW·
12. LEDGE AND EXPERIENCE..
13.
14.
15.                           RESPECTFULLY SUBMITTED,
16. DATED:                     MARCUS L. HARRISON
17.  AUGUST 1ST; 2008          Marcus L. Harrison
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

1.          • PROOF  OF  SERVICE •
2.                          CASE No: C·07·3824·SI·PR
3.        I, MARCUS L. HARRISON #H54077 HEREBY decl·
4. ARE AS Follows:
5.          THAT I, MARCUS L. HARRISON #H54077 is A PRI·
6. SONER THAT is BEING HELD iN THE SECURITY HOUSING UNIT
7. AT PELICAN BAY STATE PRISON, iN CRESCENT CITY, CALIF·
8. ORNIA.. I AM ALSO THE PLAINTIFF iN THE AFOREMENTIONED
9. CIVIL CASE.. AND THAT, ON AUGUST 1ST, 2008 I MAILED
10. A TRUE COPY OF THE FOLLOWING DOCUMENT: A REPLY TO
11. THE DEFENDANT'S OPPOSITION TO PLAINTIFF'S SUPPLEME·
12. NTAL MOTION FOR A COURT ORDER, TO THE FOLLOWING
13. ADDRESSES:
14.      ATTN: U.S. NORTHERN DISTRICT COURT
15.        C/O· MS. SUSAN ILLSTON • JUDGE
16.          450· GOLDEN GATE · AVE.
17.        SAN FRANCISCO _____ CA. 94102
18.
19.      ATTN: DEPUTY ATTORNEY GENERAL OFFICE
20.        C/O· MS. LISA SCIANDRA
21.          455· GOLDEN GATE · AVE. # 11000
22.        SAN FRANCISCO _____ CA. 94102·7004
23.      I, HEREBY declARE UNDER THE PENALTY OF PERJURY
24. THAT THE FOREGOING iS TRUE AND CORRECT..
25.
26.  DATED:                    RESPECTFULLY SUBMITTED,
27.  AUGUST 1ST, 2008          MARCUS L. HARRISON
28.                            Marcus L. Harrison

# ·EXHIBIT·A·

FR:    P. Jones, B26077    d4-107    4/9/08

Re: Approved Legal Correspondence (one time only)

Mr. Harris please find enclosed the following Legal documentation for Your court case:

(1) my affidavit (3 pages) with support Exhibits (39 pages) (I need my Exhibits back for my civil case)

• "A": Officials Pledge of the Universal Negro Improve. Assoc.

• "A"(1) MOTHERS OF NABSIO's African-American History Studies Course

• "(2) NAT. ASSOC. of BEDS & SIS. IN & OUT (NABSIO) A-A Studies Program

• "(3) NABSIO's George Jackson University's NEWS of Marcus Garvey Study Group

• "(4) Enrollment Application Form

• "(5) N.A. Criminology 101 Proposal

• "(6) Studies Correspondence

• Exh. "B" CDCR-PBSP Memo (12/28/01) re: Race-based censorship ban of Afrikan "Kiswahili" Heritage cultural language "Kwanzaa"

• "B" (1) Kwanzaa" Kiswahili Heritage cultural language Celebration

• Exh. "C" 1: CDC 1819 (6/6/05) Denial of Affiants outgoing Letter for using the word "Black August Culture"

• "(2) Denied community's Letter, and GA-22 (8/11/05) Inmate Req. For Interview

• "(3) Community's Black August Cultural Event Flier; & Schedule of Events

• "(4) CDC 1819 (8/22/05) Denied Affiants 2005 catalog from South Chicago Vendor

"C" (5) South Chicago ABC Zine Dist. Catalog 2005

" (6) CDC 602 (9/6/05) Log no. D05-02379

" (7) (10/13/05) Returned from PBSP Appeal without processing

" (8) (2/13/05) Log no. D05-00373

" (9) (6/28/05) "  "  D05-01742

(10) (6/27/05) "  " Returned with no replyon (7/23/05)

(11) (8/21/05) Log no, D05-0223)

Exh. "D"(1) ACLU Letter To Prison Warden on behalf of New frikan-Black community's expressed Black August Culture

" (2) Civil Rights Legal Case Announcement & Community itizenry Affidavit

" (3) Court Summons (11/18/07), GA-22 I/M Request Interview 2/11/07)

Total number of pages enclosed in mailing: 42

s/n Paul Jones

OF NORTHERN CALIFORNIA

In re: MARCUS HARRISON, CIVIL RIGHTS ACTION
CASE NO. C07-3824 SI

= AFFIDAVIT OF WITNESS PAUL JONES, JR. IN SUPPORT OF PLAINTIFF'S CLAIMS =

I, PAUL JONES, JR., hereby this sworn Affidavit declare:

1) I am a person of Afrikan Ancestry, born and raised in the United States/California, where I have been a citizenry member of the United States/California, where I have been a Culture-Nationality All Afrikan/BLACK = New Afrikan Community/race and Culture-Nationality All my life;

2) I am currently confined at CDCR-PBSP-SHU, where I have been held indefinitely locked away since April 1990, not for committing any infraction or acts of serious misconduct or for committing any unlawful acts, but innocently supporting my community in its responsibilities to encourage, establish and maintain ties between its citizenry, whether free or imprisoned, some of which was used in CDCR-PBSP's underground scheme to keep me indefinitely locked up for nearly twenty (20) years;

3) In 1970 I arrived in CDC, enrolled in a community outreach Afrikan cultural program at San Quentin State Prison called "Self Advancement Toward Education" (S.A.T.E.), sponsored by the prison administration which initiated my self-education studies and learning about my community's history, culture, heritage, etc. developing a social conscious understanding of my responsibility to reach out, give back and support my community;

4) Between the 70s and present, I've continued my self-education and community (inside/outside) support educational, cultural, social/human needs, which contributed to my political, social-cultural, conscious development; Allowing me to share in our community's historical Afrikan Heritage Kiswahili culture language celebrations like KWANZAA, BLACK August, MAAFA, HARAMBEE, until recent years; (see Paragraphs 5, 9-19 below)

5) In April 1990, I was transferred here to PBSP-SHU and brought along with me my innocuous self-education, community support & social, historical, cultural heritage, political, educational-literary reading materials, studies and publications, including the community's Kiswahili cultural language dictionary, to continue my Heritage studies, which had never been ruled prohibited by CDC throughout my near four decades, thirty-eight (38) years of imprisonment. In December 2001, the CDCR employees, which comprise of a white majority Administration, passed its discriminatory race-based cultural censorship ban proscribing it. (see Paragraph #9 below & Exh. "B")

6) Since 1995 I've been enrolled in outside community educational programs such as, "National Association for Brothers and Sisters Inside-Out (NABSIO) Afro-Centric cultural education programs by Dr. Donald Evans, Nathaniel Perkins-Ali and the Mothers of NABSIO;

7) The community's NABSIO program is designed to reduce functional and cultural illiteracy, generally found among the poor, and specifically among BLACK prisoners, who seem to be the most impacted - It reaches out and invites those who are willing to give back positively to our communities in the field of education. It also offers access to its George Jackson University program; Afrocentric heritage cultural education offering: • Afrocentric Program • New Afrikan Criminology 101 • Math Program • MALCOLM X Books to Prisoners Project • Reading and writing Program • New Afrikan Collective Think Tank • MARCUS GARVEY Study Group.

8) I am attaching hereto as Affidavit Exhibit _A_ (8pp.), true copies of said community-support educational programs;

9) In 2002, PBSP banned our community's Afrikan Heritage Kiswahili Culture which is the first time that I've ever seen this done throughout my 38 years of incarceration (1970-2007), such a ban censors our community from sharing its heritage and cultural activities, which includes their annual Kiswahili cultural celebrations, Kwanzaa, Black August Maafa, Harambee, etc.; its usage is as common within our community's home life and culture from birth when we learned the Kiswahili words "Mama" (english translation "Mother");

10) I am attaching hereto a true copy of PBSP's December 2001 cultural ban as Affidavit Exhibit "B";

11) In 2005, white guards G. Stewart (IGI), M.D. Yax, S. Bradley, et al., initiated a blanket censorship ban of our community's annual Black August cultural celebrations by with holding, denying, stealing and refusing to notify/return to sender all property/mail containing the words "Black August" culture, as described below:

   (a) June 14, 2005 mailing from Black Yoga Teachers Association inviting me to share in its community health-exercise program.

   (b) February 9, 2005 mailing from Brother-in-law Shaka At-Thinnin who is also a community supporter of its Black August culture programs and has help ed me with legal documents as well for the past 25 years.

   (c) June 24, 2005 mailing from Brother-in-law Shaka, and October 12, 2005

   (d) August 25, 2005 "2005 catalog" mailing from South Chicago ABC Zine Distri-bution (Issue No. 23 Summer 2005) Prison Focus Human Rights Organi-zation, California Prison Focus News Publication, which was allowed to be delivered to non-Black prisoners. ---- only-

   (e) August 11, 2005 mailing from brother-in-law Shaka

12) I am attaching hereto true copies of said race-base culture cen-sorship ban Exhibits "C" pp. 1-14. (my futile appeal efforts and a compl-aint letter submitted on behalf of our community innocent free speech, conduct and association)

13) I've never seen nor heard of any prison rule banning this comm-unity heritage cultural celebration for the last twenty-five (25) years that I'd been aware of this community annual event. And when I attempted to bring a state tort suit against these guards, my efforts to have them served (via substitute server) was thwarted, obstructed, interfered with and disregarded. Unlawfully keeping me from prosecuting my case; (see attached Exhibit "D" pp. 1-3)

14) I later learned during my Parole Board Hearing that there was informat-ion secreted in my prison file referencing my association with the com-munity support New Afrikan Criminology 101 education program as some Absurd alleged gang activity; (see paragraph 7 above & Exh. "A")

15) In January 2006, these IGI officials (Stewart, et al.) had me transferred to a restrictive program within the prisons' D-Facility SHU called the "Short Corridor" where Stewart was assigned as the D4 unit-Counselor;

16) In November 2006, when I was preparing for my next Parole Hearing I received a paper which showed that IGI Stewart had Secreted into my prison files some subjective reports containing their views, interpretations and judgments regarding my community support described above, then classified it as "confidential" to prevent me from viewing and disputing the content of their reports;

17) This is not a new practice by these PBSP employees, in general, especially those assigned to the prison's gang unit (IGI/ISU) which are majority white and ethnocentric toward the prison's majority non-white SHU prisoners and outside community's innocent free speech and social-cultural conduct;

18) To date prison officials have failed to produce a single a single shred of evidence to justify any legitimate penological reason for their ban on our cultural practices, or to demonstrate how they've reached the conclusion that everything celebrated within/without the Black community is somehow gang-related.

19) Pelican Bay State Prison's employees, especially those who are charged with the duties of rooting out gang activity, have acted in the most blatant subjective discriminatory manner in regard to Black historical views, beliefs, traditions, culture, etc., it is clear from their patterned practice that it is based in institutional-racism. And thus far, PBSP-officials have been able get away with it through institutional-impunity while legal claims are brushed aside. Racism destroys reason.

If called upon, I would testify to the above-stated information before a court of law.

I declare under penalty of perjury that the foregoing is true and correct, except for those matters based upon information and belief which I also believe to be true. Executed on this __1__ day of April of 2008, at Crescent City, California.

Paul Jones, Jr.
PAUL JONES, JR.

(In re: M. Harrison Civil Rights
Action, U.S.N.D.C, no. CC 7-3824)

LTF's
.rmess
fidavit

EXHIBIT·B·

To: Class Participants

<u>Re: Freedom, Justice & Humyn Rights</u>

Greetings!

The Freedom and Justice Project for the Peoples' Inalienable Humyn Rights (both behind and beyond neo-colonial lines) are currently preparing to present to the state judiciary a collective legal action on behalf of the people in general (i.e. families, friends, relatives, supporters, etc.) and the class of imprisoned persons unjustly kept in isolation confinement, being subjects of dehumanizing mental, physical, spiritual, psychological, and emotional patterns of mistreatment, in particular.

Enclosed, please find the following sample legal document entitled: (appendix) Suggested-Points To Include In Petitioners' Declarations', which offers key 'talking' points to assist one in presenting your similar case factors that will articulate an atypical and significant hardship from long term duration and effects upon you and your love ones, upon which the sought judicial relief is necessary to abirritate the continuing adverse effects.

Note: By now all class petitioners should have received a copy of the 'Peoples' Petition for Freedom Justice & Humyn Rights' from OFF! Editor, OCC/SUNY Binghamton, in which we need everyone to have their family, relatives, friends, supporters to sign the signature page (5) and forward to the Freedom and Justice Project to facilitate the developmental construction of the class legal support base. It is noteworthy that the success of such a progressive undertaking is predicated upon the collective effort of its class. So please have the names of all interested supporters in babylon registered to receive info updates from ministry.

Finally, when preparing your declaration, please omit using case laws, because these shall be conceptualized and directed in the (Table of Authorities) (0-29) portion which would augment the points offered in the declaration and evaginate the essential premise(s) of each cause of action set forth in the petition.

In Solidarity,
Freedom & Justice Project

Enclosed: (1) appendix Suggested-Points to include in Petitioners' Declaration (2 pages)

Appendix – Suggested Talking Points to include in each Petitioners' Declaration

In support of any class action litigation prepared and filed, the importance of declarations and material support documents goes without saying. Accordingly, the below pointers will assist the petitioners in the preparation of their declarations. Each talking point should be a separate paragraph. This list of talking points includes examples of statements that you might make in your declaration. However, bear in mind that the sample statements are only intended to aide you in the writing process. Your declaration is your personal verification of facts which you know to be true, and you should write in your own words and please attach key support papers.

1. Identify yourself. Include your name, the institution where you are contained, and your number. (Example: "My name is John Doe. I am in the custody of CDC and housed at Pelican Bay State Prison. My assigned prison number is A-00000).

2. State how long you have served in prison, and how much of that time you have served in isolation confinement (for your political beliefs in support of the People's (both inside & outside) Freedom, Justice, and Human Rights Struggle.

3. State how prison officials have used your support of the people as an excuse to place and/or keep you in extreme isolation confinement (Example: "I've been in SHU since Jan. 3, 1978, because prison guards and their agents allege that my socialization with persons from the same, or similar economic, social, religious, geographical, environmental, historical, class and racial background/community as myself, whether they be inside prison or out in society at large.")
<Attach your support papers>

4. If applicable, state how the Board of Prison Terms determination of your parole eligibility is adversely affected by your placement in isolation confinement (such as, "deprived access to education, etc. program services) and prison officials group labeling/validation/indeterminate SHU isolation confinement/classification debriefing scheme to get one to denounce the principles of his political beliefs and ideas.
<Attach your support papers>

5. State how prison officials unjustly use your non-threatening correspondence with your people to deny you release from isolation confinement to the general prison population at six (6) year intervals (such as, "I sent a card, letter, etc. to my friend's mother, etc." that prison guards misconstrued, misjudged based on their biased views.)
<Attach your support papers>

6. If applicable, state any serious medical condition(s). You are experiencing and was/is being denied adequate medical/health care and treatment (i.e. "I have been suffering from complications with my skin, eyes, glands, etc. resulting from being denied access to sunlight for the last "x-amount of years" of being buried in this SHU dungeon," in which the current prison medical/health care policies, patterns of practice are cultural insensitive toward persons from diverse national and ethnic backgrounds.)
<Attach your support papers>

7. Identify your ancestral origin and language background. Discuss the history and scope of your language study. Be sure to mention which of the prohibited languages you studied. (Example: In January 2001, I began studying Swahili, etc. with the help of language books. I taught myself to read, write and speak Swahili and understand it as an exercise in discipline,

self-improvement and because I want to learn the Kiswahili cultural-syntex language, religion/spirituality, celebrations, like the annual Kiswhahili holiday "Kwanzaa").

<div align="center">&lt;Attach your support papers&gt;</div>

8. List all publications you have ever possessed while in prison which were written in the prohibited language. Include your own publications, such as poetry that you have written. (Example: In January 2001, I ordered and received the 'Dictionary of the Swahili language' and 'Swahili for Beginners' grammar book. In addition, I wrote two poetry pamphlets in Swahili which were confiscated by prison guards in January 2002."

<div align="center">&lt;Attach your support papers&gt;</div>

9. If applicable list occasions when you have corresponded or communicated in the censored language. State to whom and the reason why you chose to practice in that language. (Example: "In December 2002, I wrote to the universities of several eastern Afrikan countries, such as Kenya, Tanzania, etc. in both their national language and remained in touch. "Neither of us deserve to be subjected to any prison censorship ban.")

10. Show that the language ban has directly harmed you, both in a concrete manner as it affected your inalienable human rights and liberty interests. (Example: Due to the ban on Swahili, my dictionaries were confiscated on January 15, 2002. I was told to either mail it home at my own expense, or if I am indigent, the state will destroy it. I feel that my personal liberty interest, including my free right of association and my freedom of speech/expression, have been abridged by the prison's denial of my right to study and speak in a language of my own choosing.")

Note: End the declaration with the following:

"I certify, under penalty of perjury that the aforementioned statements are true to the best of my knowledge."

Then you sign your name and write the date.

** Be sure to attach any correspondence (or published work especially) that is written in the prohibited language which are still in your possession.

--Instruction Note—
Please attach your signed and date declaration to the back of the class action petition you received in your Freedom and Justice Package (pages 4-7). Write the name of the County Superior Court Sacramento. Make yourself a copy and send to :
Never Forget Ministry
Freedom & Justice Project
Attn: Community Coordinators

# The People's Petition
## For
## Freedom, Justice And Humyn Rights

Name                    --The People Petition--                    Address

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

11. _____

12. _____

13. _____

14. _____

15. _____

16. _____

17. _____

18. _____

19. _____

20. _____

21. _____

22. _____

23. _____

24. _____

25. _____

Return this Petition to:
Never Forget Ministry
Freedom & Justice Project
PO Box 1687
Crescent City, CA 95532

To:  All Concerned Families, Relatives, Friends, & Supporters

Please show your support by signing your names above (the more names of people signing off the better)  Also, feel free to provide an address so that we can send you follow up information on the progress of this campaign drive.

Thank you,
In Solidarity

To: The Appointed Officials of the U.S. and California Government

From:  The Families, Relatives, Friends & Supporters of the Below-Named Persons (wrongly kept in extreme isolation for the   last ten to forty years for their political beliefs and ideas)

Re: Cruel and Unusual Punishment: Demand for Immediate Release

--Petitioning the Government for Redress—

We, the People, believe that the following political-conscious persons being kept in extreme isolation confinement for the last ten (10) to forty (40) years (1969 to present) not for violating any laws, but because of their political beliefs and ideas in support of the People's Struggles for Humyn Rights, Freedom & Justice, both Inside and Out, should be immediately released from their SHU dungeon cages to the general population where they have access to education, vocational, religious, recreational, and other program services to contact their loved ones, etc. and prepare for their release to go home.

Names and Locations of those Unjustly kept in Isolation Confinement:

1.  Richard Johnson, K53293/D10-106, PO Box 7500, Crescent City, CA 95532
2.  Paul Jones, B26077/D10-205, PO Box 7500, Crescent City, CA 95532
3.  Kenneth Carter, B52119/C5-120, PO Box 7500, Crescent City, CA 95532
4.  Daryl Burnett, B60892/C5-120, PO Box 7500, Crescent City, CA 95532
5.  Louis Powell, B59864/C3-117, PO Box 7500, Crescent City, CA 95532
6.  Rueben Williams, B72882/C5-117, PO Box 7500, Crescent City, CA 95532
7.  James Benson, D63433/C2-201, PO Box 7500, Crescent City, CA 95532
8.  Paul Redd, B72683/C2-202, PO Box 7500, Crescent City, CA 95532
9.  Leonard Alexander, B72288/D6-209, PO Box 7500, Crescent City, CA 95532
10. Joseph Salvant, C08365/D10-104, PO Box 7500, Crescent City, CA 95532
11. Jeffery Franklin, C08545/C11-219, PO Box 7500, Crescent City, CA 95532
12. Lawrence Woodard, C21690/D8-110, PO Box 7500, Crescent City, CA 95532
13. Charles Coleman, C60680/D10-202, PO Box 7500, Crescent City, CA 95532
14. Harold Shamburger, D16530/D10-201, PO Box 7500, Crescent City, CA 95532
15. Ronnie Dewberry, C35671/D6-212, PO Box 7500, Crescent City, CA 95532
16. Clyde Jackson, C33559/D6-111, PO Box 7500, Crescent City, CA 95532
17. Michael Rhinehart, C39412/C3-109, PO Box 7500, Crescent City, CA 95532
18. James Williamsun, D34288/D10-205, PO Box 7500, Crescent City, CA 95532
19. Hugo Pinell, A88401/D3-212, PO Box 7500, Crescent City, CA 95532
20. James Harvey, C48884/D6-112, PO Box 7500, Crescent City, CA 95532
21. Randall Ellis, C68764/4B-3L-12, PO Box 3481, Corcoran, CA 93212
22. George Mosley, C33188/4B-3L-12, PO Box 3481, Corcoran, CA 93212
23. Tyrone Robinson, C82830/4B-3L-5, PO Box 3481, Corcoran, CA 93212
24. Michael Cooperwood, C46411/C7-123, PO Box 3481, Corcoran, CA 93212
25. Petitioner Robert Taylor, D03780/D6-111, PO Box 7500, Crescent City, CA 95532
26. Petitioner Johnell Bailey, K03590/C8-103, PO Box 7500, Crescent City, CA 95532
27. Petitioner Lashawn Taylor, H14167/D6-212, PO Box 7500, Crescent City, CA 95532
28. Petitioner Marcus Harrison, H54077/D10-122, PO Box 7500, Crescent City, CA 95532
29. Petitioner Jay Burton, J45095/D10-212, PO Box 7500, Crescent City, CA 95532

Sign your name and address here:

_____          _____

(name)                           (address)

4

Families, Friends, Relatives, et al,
of Imprisoned Persons Kept in
Isolation Confinement (SHU) for
the last Ten to Forty Years

(Amicus Curiar for Class Parties)

---

Families, Relatives, Friends of and for James Williamsun
(D34288), Paul Jones (B26077), Richard Johnson (K53293),
Charles Coleman (C60680), Harold Shamburger (D16530),
Joseph Salvant (C08365), Louis Powell (B59864), Paul Redd
(B72683), Randall Ellis (C68764), Ronnie Dewberry
(C35671), Kenneth Carter (B52119), Daryl Burnett (B60892),
Clyde Jackson (C33559), James Benson (D63433), Michael
Rhinehart (C39412), Leonard Alexander (B72288), Rueben
Williams (B72882), Larry Woodard (C21690), James Harvey
(C48884), Michael Cooperwood (C46411), Jeffery Franklin
(C08545), Tyrone Robinson (C82830), Hugo Pinell (A88401),
Lashawn Taylor (H14167), Johnell Bailey (K03590), Robert
Taylor (D03780), Marcus Harrison (H54079), Jay Burton
(J45095), George Mosley (C33188)

Plaintiffs,

vs.

State of California (through the person of California
Department of Corrections, Board of Prison Terms,) et al.

Defendants.

Class Action

Petition for Relief

(Violations of
Constitutional, Statutory,
Human and Civil Rights to
Life, Liberty, Education,
Equal Protection, Due
Process, and Freedom from
Discrimination, Cruel &
Unusual Punishment)

Families, Friends, Relatives
of (for and on behalf) those
Imprisoned Persons kept in
Isolation Confinement for
last Ten-Forty Years

(Amicus            Curiar)

## Introduction

This petition seeks the termination of the state's policy and practices of keeping petitioners in extreme isolation confinement for the last ten (10) to forty (40) years, depriving them of any opportunity to be freed and released on parole, the opportunity to contact and humanly interact, socialize with their families, relatives, friends, etc., depriving them of access to education, vocational, religious/spiritual enrichment, recreational, etc., programs and services necessary for natural human growth and development. Petitioners come before this court claiming a human, constitutional, civil, and statutory right to be free from decade(s) of being subjected and exposed to a state sanctioned cruel and unusual isolation (SHU) confinement policies, programs, and institutional practices that attack the human mind, body, and soul (mentally, psychologically, emotionally, physically, spiritually, etc.). Petitioners collectively have been kept in extreme isolation confinement under the same exact pretextual excuses. Majority of the petitioners have been in isolation confinement for decades, including one kept there since the late 1960s, some since the 1970s, others since the 1980s, etc. Petitioners are kept in extreme isolation confinement because state officials/prison guards have classified, validated, and judged their political thoughts/beliefs ideas and support of the Peoples' Struggle for Humyn Rights, Freedom, and Justice both inside and outside the prison system is "deemed a criminal conspiracy threat to the safety and security" of the institution/state department of corrections. Petitioners are deprived of any meaningful avenues for seeking impartial and fair redress; nor do the state prison system employ, orientate, instruct and train qualified personnel capable of adequately identifying, evaluating, treating, and curing symptoms, medical health, diet, and nutrition care and concerns relative       to       distinct       culture       and       heritage       background       factors.

Parties

(Name/Location of those Unjustly Kept in Isolation Confinement)

1. Petitioner Paul Jones, B26077/D10-205, PO Box 7500, Crescent City, CA 95532

2. Petitioner Kenneth Carter, B52119/C5-120, PO Box 7500, Crescent City, CA 95532

3. Petitioner Daryl Burnett, B60892/C5-120, PO Box 7500, Crescent City, CA 95532

4. Petitioner Louis Powell, B59864/C3-117, PO Box 7500, Crescent City, CA 95532

5. Petitioner Richard Johnson, K53293/D10-106, PO Box 7500, Crescent City, CA 95532

6. Petitioner James Benson, D63433/C2-201, PO Box 7500, Crescent City, CA 95532

7. Petitioner Paul Redd, B72683/C2-202, PO Box 7500, Crescent City, CA 95532

8. Petitioner Rueben Williams, B72882/C5-117, PO Box 7500, Crescent City, CA 95532

9. Petitioner Charles Coleman, C60680/D10-202, PO Box 7500, Crescent City, CA 95532

10. Petitioner Leonard Alexander, B72288/D6-209, PO Box 7500, Crescent City, CA 95532

11. Petitioner Joseph Salvant, C08365/D10-104, PO Box 7500, Crescent City, CA 95532

12. Petitioner Ronnie Dewberry, C35671/D6-212, PO Box 7500, Crescent City, CA 95532

13. Petitioner Harold Shamburger, D16530/D10-201, PO Box 7500, Crescent City, CA 95532

14. Petitioner Jeffery Franklin, C08545/C11-219, PO Box 7500, Crescent City, CA 95532

15. Petitioner Clyde Jackson, C33559/D6-111, PO Box 7500, Crescent City, CA 95532

16. Petitioner Michael Rhinehart, C39412/C3-109, PO Box 7500, Crescent City, CA 95532

17. Petitioner James Williamson, D34288/D10-205, PO Box 7500, Crescent City, CA 95532

18. Petitioner Lawrence Woodard, C21690/D8-110, PO Box 7500, Crescent City, CA 95532

19. Petitioner Hugo Pinell, A88401/D3-212, PO Box 7500, Crescent City, CA 95532

20. Petitioner James Harvey, C48884/D6-112, PO Box 7500, Crescent City, CA 95532

21. Petitioner Michael Cooperwood, C46411/C7-123, PO 7500, Crescent City, CA 95532

22. Petitioner Robert Taylor, D03780/D6-111, PO 7500, Crescent City, CA 95532

23. Petitioner Johnell Bailey, K03590/C8-103, PO Box 7500, Crescent City, CA 95532

24. Petitioner Lashawn Taylor, H14167/D6-212, PO Box 7500, Crescent City, CA 95532

25. Petitioner Marcus Harrison, H54077/D10-122, PO Box 7500, Crescent City, CA 95532

26. Petitioner Randall Ellis, C68764/4B-3L-12, PO Box 3481, Corcoran, CA 93212

27. Petitioner George Moslety, C33188/4B-3L-12, PO Box 3481, Corcoran, CA 93212

28. Petitioner Tyrone Robinson, C82830/4B-3L-05, PO Box 3481, Corcoran, CA 93212

29. Petitioner Jay Burton, J45095/D10-212, PO Box 7500, Crescent City, CA 95532

## Prayer for Relief

Wherefore, we respectfully request:

1) That Defendants be ordered to cease and desist the holding of petitioners in isolation confinement for their political beliefs, ideas and support of human rights, freedoms, and justice efforts both inside and out;

2) That Defendants be ordered to immediately release Petitioners out of isolation confinement to the general prisoner population;

3) That Defendants immediately provide Petitioners with access to educational, vocational, and other program services to enable them to meet the state's eligibility requirements for parole and return home to their families;

4) The Defendants be prohibited from carrying out any further acts of reprisal, harassment, and/or retaliations against Petitioners, their Families, Friends, Relatives, and Supporters, both now and in the future.

Dated: _____                        Respectfully Submitted,

                                           _____
                                           Name of Petitioner

Petitioners' Instruction Sheet

The Peoples' Petition for Freedom, Justice, and Humyn Rights Campaign is a collective legal endeavor to empower the people to exercise the humyn, constitutional, and civil right to petition the government for relief (U.S.C.A. 1st Cal. Const. Art. I, Sec 3)

Your total package shall include:

Step 1. Petitions cover (page 1)
      Peoples' Signature (page 2—send these 3 pages to be signed and forwarded to address at bottom of p.2, attn: Freedom and Justice Project)

      Peoples' Petition to Government (page 3)
          (Note: Page 3 will be sent to Senate/H.O.R./K.D.O.K./etc. U.N. (Afrikan Nations)

Step 2. Class Action Petition (After the people exhaust the first step (sending page 3 to government), we will begin presenting the people's petition to the judiciary.)

Note: The people will receive appreciation gram, update notices, and fact sheets.
Community education: Fact sheet in support of petition

Once the people are notified, then a concerted effort must be initiated to ensure as broad a participation as necessary. All ideas, suggestions, etc. to facilitate this endeavor is welcomed.

In Solidarity,
Freedom & Justice Project

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     H-54077                    INMATE NAME:     **HARRISON, MARCUS**

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) ACTIVE/INACTIVE REVIEW _____ submitted by

Lt. T. L. Rosenkrans _____ .
                                    STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    **N/A**    .

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

a)☐ This source has previously provided confidential information which has proven to be true.

b)☐ This source participated in and successfully completed a Polygraph examination.

c)☐ More than one source independently provided the same information.

d)☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)☐ Part of the information provided by the source(s) has already proven to be true.

f) ☒ Other (Explain) Information obtained as an investigative finding by the IGI unit.

_____ .

3) Disclosure of information received.

The information received indicated the following:

**The report documents the discovery of evidence during a search of property belonging to a validated BGF member. The evidence included a list of approximately 29 validated BGF members and associates and included the name of Inmate Harrison. This document establishes association between Harrison and numerous validated members and associates of the BGF.**

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

**Confidential CDC 128b dated 9/8/04, authored by Officer D. Barneburg, located in the confidential material folder of the Central File.**

_____          _/8 - 5 o 5_____
STAFF SIGNATURE, TITLE                                         DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File; GREEN ∞ Inmate; YELLOW ∞ Institution Use

# ·EXHIBIT·C·

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

## REQUEST FOR CORRESPONDENCE APPROVAL
CDC 1074 (8/87)

| FR: R. Horel | TO: R. Horel |
|---|---|
| TITLE: Warden | TITLE: Warden |
| INSTITUTION/PAROLE REGION: PBSP | INSTITUTION/PAROLE REGION: |
| ADDRESS: 5905 Lake Earl dr. Cresent City, Ca. 95531 | ADDRESS: |

| 1. INMATE/PAROLEE REQUESTING TO CORRESPOND: Harrison, Marcus | 2. INMATE/PAROLEE UNDER YOUR JURISDICTION: Williamson, Jimmy    B4.107L |
|---|---|
| CDC NUMBER H-54077   CURRENT STATUS: ☒ INMATE  ☐ PAROLEE | CDC NUMBER D-34788   CURRENT STATUS: ☒ INMATE  ☐ PAROLEE |
| KNOWN GANG AFFILIATION(S): Validated as member of Black Guerilla Family | KNOWN GANG AFFILIATION(S): Validated as Associate of Black Guerilla Family. |
| MISCELLANEOUS INFORMATION/COMMENTS: One time correspondence for Declaration case number C-07-3824-SI-PR Federal Dist Court, Northern Dist. of Ca | MISCELLANEOUS INFORMATION/COMMENTS: All info reviewed by IGI staff and must pertain to Court Case. |
| COUNSELOR/AGENT'S RECOMMENDATION: ☒ APPROVAL  ☐ DENIAL for the following reason: Current Court Case confirmed by Litigation Office | COUNSELOR/AGENT'S RECOMMENDATION: ☒ APPROVAL  ☐ DENIAL for the following reason: |
| COUNSELOR/AGENT'S SIGNATURE: ▶ B. Flowers   DATE: 2/15/08 | COUNSELOR/AGENT'S SIGNATURE: ▶ B. Flowers   DATE: 2/15/08 |
| COUNSELOR/AGENT'S NAME (TYPED OR PRINTED) B. Flowers CCI | COUNSELOR/AGENT'S NAME (TYPED OR PRINTED) B. Flowers CCI |
| SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED  ☐ DENIED for the following reason: | SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED  ☐ DENIED for the following reason: |
| SIGNATURE: ▶   DATE: 2/15/09 | SIGNATURE: ▶   DATE: 2/15 |
| TITLE: FC | TITLE: FC |

| INSTRUCTIONS: | INSTRUCTIONS: |
|---|---|
| If request is denied, note reason and notify inmate/parolee #1<br><br>If request is approved by requesting facility, retain pending copy and forward request to inmate/parolee #2's supervising authority. | Receiving facility to retain last two copies (1 for inmate/parolee, 1 for inmate/parolee's file and return remainder to requesting facility.<br><br>DISTRIBUTION (After processing):<br>Original — Inmate/Parolee #1's File<br>copy — Inmate/Parolee #1<br>copy — Inmate/Parolee #2's File<br>copy — Inmate/Parolee #2<br>copy — Retained by requesting facility until process completed. |

88 85724

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## REQUEST FOR CORRESPONDENCE APPROVAL

CDC 1074 (8/87)

| | |
|---|---|
| FR: R. HOREL | TO: R. HOREL |
| TITLE: WARDEN | TITLE: WARDEN |
| INSTITUTION/PAROLE REGION: PBSP | INSTITUTION/PAROLE REGION: |
| ADDRESS: 5905 LAKE EARL dR. CRESCENT City, CA 95531 | ADDRESS: |

| 1. INMATE/PAROLEE REQUESTING TO CORRESPOND: | 2. INMATE/PAROLEE UNDER YOUR JURISDICTION: |
|---|---|
| HARRISON MARCUS | JONES, PAUL          D4-107U |
| CDC NUMBER: H-54077   CURRENT STATUS: ☒ INMATE ☐ PAROLEE | CDC NUMBER: B-26077   CURRENT STATUS: ☒ INMATE ☐ PAROLEE |
| KNOWN GANG AFFILIATION(S): VALIDATED AS MEMBER of BLACK GUERILLA FAMILY | KNOWN GANG AFFILIATION(S): VALIDATED AS A MEMBER of BLACK GUERILLA FAMILY. |
| MISCELLANEOUS INFORMATION/COMMENTS: ONE TIME CORRESPONDENCE FOR DECLARATION CASE NUMBER C-07-3824-SI-RI PR Federal Dist. court NorTHERN Dist. of CA | MISCELLANEOUS INFORMATION/COMMENTS: All info REVIEWED by IGI StAff and must PERTAIN to COURT CASE. |
| COUNSELOR/AGENT'S RECOMMENDATION: ☒ APPROVAL ☐ DENIAL for the following reason: Current Court CASE CONFIRMED by Litigation Office | COUNSELOR/AGENT'S RECOMMENDATION: ☒ APPROVAL ☐ DENIAL for the following reason: |
| COUNSELOR/AGENT'S SIGNATURE: ▶   DATE: 2/15/08 | COUNSELOR/AGENT'S SIGNATURE: ▶   DATE: 2/15/08 |
| COUNSELOR/AGENT'S NAME (TYPED OR PRINTED): B. FLOWERS CCI | COUNSELOR/AGENT'S NAME (TYPED OR PRINTED): B. FLOWERS CCI |
| SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED ☐ DENIED for the following reason: | SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED ☐ DENIED for the following reason: |
| SIGNATURE: ▶   DATE: 2/11/08 | SIGNATURE: ▶   DATE: 2/11/08 |
| TITLE: FC | TITLE: FC |

| INSTRUCTIONS: | INSTRUCTIONS: |
|---|---|
| If request is denied, note reason and notify inmate/parolee #1. If request is approved by requesting facility, retain pending copy and forward request to inmate/parolee #2's supervising authority. | Receiving facility to retain last two copies (1 for inmate/parolee, 1 for inmate/parolee's file and return remainder to requesting facility. DISTRIBUTION (After processing): Original — Inmate/Parolee #1's File   copy — Inmate/Parolee #1   copy — Inmate/Parolee #2's File   copy — Inmate/Parolee #2   copy — Retained by requesting facility until process completed. |

88 85724